**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF FLORIDA**

**CASE NO. 22-cr-20350-ALTMAN**

**UNITED STATES OF AMERICA**,

v.

**OSVALDO GONZALEZ,**
**HUMBERTO VASQUEZ DIAZ,** *and*
**ANGEL GABRIEL PALANCO**,

    *Defendants.*
_____/

# ORDER

The Defendants, interdicted at sea on a vessel carrying huge amounts of cocaine, are charged with conspiring to possess a controlled substance aboard a vessel subject to the jurisdiction of the United States, in violation of 46 U.S.C. § 70506(b), and possessing with intent to distribute a controlled substance aboard such a vessel, in violation of 46 U.S.C. § 70503(a)(1). *See* Indictment [ECF No. 3]. They've now moved to dismiss the Indictment. *See* Motion to Dismiss (the "Motion") [ECF No. 17].[1] After careful review, we **DENY** their Motion.

## THE FACTS

On July 8, 2022, the USS *Wichita* spotted a "go-fast vessel"[2] ("GFV") in the water approximately 130 nautical miles south of Isla Saona, Dominican Republic. Response at 1; *see also* Motion at 1. The *Wichita* launched its helicopter and a rigid-hull inflatable boat manned by a U.S. Coast Guard boarding team to investigate. *See* Response at 1–2. After a few warning shots from the

---

[1] The Motion is fully briefed and ripe for adjudication. *See* Government's Response [ECF No. 23]; Defendants' Reply [ECF No. 24].

[2] "A working definition of a go-fast is a power boat which primarily employs speed to evade capture." H.I. Sutton, *3 Types of Go-Fast Narco Boats the Coast Guard Faces*, FORBES, available at https://www.forbes.com/sites/hisutton/2020/08/21/3-types-of-high-speed-smuggling-boats-facing-the-coast-guard (last visited July 17, 2022).

helicopter, the GFV stopped in the water, and the boarding team took control of the vessel. *Id.* at 2. The officers questioned the three men on board—our Defendants—asking them who was the master of the boat and whether anyone wanted to make a claim of nationality for the GFV. *Ibid.* The men gave their names but refused to identify a master or person in charge and made no claim of nationality for the vessel. *Ibid.* The boarding team then received authorization to treat the vessel as one *without* nationality and boarded it with a full team. *Ibid.* Once onboard, the Coast Guard officers found an unusual compartment on the boat that was nailed shut and which, when pried open, revealed several packages that tested positive for cocaine. *Ibid.* All told, the Coast Guard recovered 972 kilograms of cocaine from the GFV. *Ibid.* The boarding team brought the three Defendants and their cocaine back to the *Wichita*, and the U.S. Government began the process of transferring the Defendants to the United States for prosecution. *See id.* at 2–3; Motion at 2.

On July 26, 2022, the Government filed a formal Complaint [ECF No. 1] in the Southern District of Florida, charging the Defendants with conspiracy to possess a controlled substance and possession with intent to distribute a controlled substance—both while onboard a vessel subject to the jurisdiction of the United States, in violation of 46 U.S.C. §§ 70506(b) & 70503(a)(1). *See* Response at 2; Motion at 2; *see generally* Complaint. That same day, the Defendants were brought before a U.S. Magistrate Judge in Puerto Rico for their initial appearances. *See* Response at 2; Motion at 2; Minute Entry, *United States v. Gonzalez et al.*, No. 22-mj-00874-GLS (D. P.R. July 26, 2022), ECF No. 4.[3]

On August 4, 2022, a grand jury in the Southern District of Florida returned a two-count indictment, charging the Defendants with the same two offenses that had been included in the Complaint. *See* Response at 2–3; Motion at 2; *see generally* Indictment. On August 8, 2022, the Defendants appeared again before the Magistrate Judge in Puerto Rico—this time for an "Identity, Removal, Bail, and Preliminary Hearing." *See* Response at 3; Minute Entries, Puerto Rico Docket,

---

[3] We'll cite to the docket in Puerto Rico as the "Puerto Rico Docket."

ECF Nos. 15–17. That same day, August 8, 2022, two of our Defendants—Mr. Gonzalez and Mr. Vasquez Diaz—were formally committed to the Southern District of Florida. *See* Commitment to Another District, Puerto Rico Docket, ECF Nos. 20–21. A few weeks later, on August 31, 2022, our third Defendant, Mr. Palanco,[4] was likewise committed to our District. *See* Commitment to Another District, Puerto Rico Docket, ECF No. 18.

Mr. Palanco[5] was the first to leave Puerto Rico via the Justice Prisoner and Alien Transportation System ("JPATS") on September 22, 2022. *See* Response at 3; Motion at 3. Mr. Gonzalez and Mr. Vasquez Diaz, however, sat in Puerto Rico for two more months before JPATS delivered them to our District on November 29, 2022. *See* Response at 3; Motion at 3. After the Defendants arrived in Miami, though, they weren't promptly brought before a magistrate judge to make their initial appearances. *See* Response at 3; Motion at 3. Instead, "due to a lack of communication between the U.S. Marshals Service, the U.S. Attorney's Office and the Magistrate Court," the Defendants didn't make their first appearances in Miami until January 3, 2023. *See* Response at 3; *see also* Motion at 3. Mr. Gonzalez was arraigned at that first appearance on January 3, 2023, and Mr. Vasquez Diaz and Mr. Palanco were arraigned two days later, on January 5, 2022. *See* Motion at 3. We then entered a Trial Order [ECF No. 14], setting the case for a jury trial during the two-week trial period beginning February 13, 2023.[6]

---

[4] This Defendant's name is spelled "Polanco" on the Puerto Rico Docket. But, since his attorneys have spelled it "Palanco" on our docket, we'll assume that this latter spelling is correct.

[5] The Government says that Mr. Vasquez Diaz left Puerto Rico on September 22, 2022, but the Defendants insist that it was Mr. Palanco who was transported first. *See* Motion at 3 n.1; Response at 3. In the next paragraph, though, the Defendants say that Mr. Palanco arrived with Mr. Gonzalez— and that Mr. Vasquez Dias traveled alone. *See id.* at 3 ("[January 3, 2023,] was more than three months after Mr. Vasquez Dias had arrived in this district, and more than one month after Mr. Gonzalez and Mr. Palanco arrived here."). We're not sure which version is correct. In any event, everyone agrees that one Defendant was transported via JPATS on September 22, 2022, and that the other two followed on November 29, 2022.

[6] A few weeks later, the Defendants moved to continue their trial, citing the need to review recently-produced discovery and to meet with their court-appointed counsel. *See* Motion to Continue [ECF No. 15] at 2. We granted that first motion to continue—and then a second similar motion [ECF

## THE LAW

"A motion to dismiss an indictment is governed by Federal Rule of Criminal Procedure 12(b)." *United States v. Arregoces Barros*, 2022 WL 1135707, at *2 (S.D. Fla. Apr. 18, 2022) (Bloom, J.). Under Rule 12(b)(1), "[a] party may raise by pretrial motion any defense, objection, or request that the court can determine without a trial on the merits." FED. R. CRIM. P. 12(b)(1). "[A] defendant may challenge an indictment on a variety of [ ] grounds, including for failure to state an offense, lack of jurisdiction, double jeopardy, improper composition of the grand jury, and certain types of prosecutorial misconduct." *United States v. Kaley*, 677 F.3d 1316, 1326 (11th Cir. 2012). "[A]n indictment may be dismissed where there is an infirmity of law in the prosecution[.]" *United States v. Torkington*, 812 F.2d 1347, 1354 (11th Cir. 1987). But "a court may not dismiss an indictment . . . on a determination of facts that should have developed at trial." *Ibid.* Instead, "[t]he sufficiency of a criminal indictment is determined from its face." *United States v. Critzer*, 951 F.2d 306, 307 (11th Cir. 1992).

## ANALYSIS

The Defendants urge us to dismiss the Indictment for five reasons. *First*, they argue that we lack subject-matter jurisdiction over the case because they were arrested in the Exclusive Economic Zone of the Dominican Republic, and (they say) this Zone "is not within the 'high Seas' as defined by customary international law[.]" Motion at 4. Their offense (they maintain) is thus "outside of Congress's limited Article I, Section 8, Clause 10 authority to 'define and punish . . . Felonies committed on the high Seas.'" *Ibid. Second*, they seek dismissal "as a sanction for the unreasonable, unnecessary, and unlawful delay resulting in their initial detention for more than two weeks without judicial oversight," *id.* at 4, which (they claim) violated Federal Rules of Criminal Procedure 5(a) and

---

18]—and finally continued the trial a third time *sua sponte* to give us time to adjudicate this Motion to Dismiss. *See* Amended Trial Orders [ECF Nos. 16, 19, 25]. The current trial date is thus August 14, 2023. *See* Amended Trial Order [ECF No. 25]. As we'll explain, though, the original February 13, 2023 trial date is the one that governs our analysis today.

4

(b), *id.* at 12. *Third*, they urge us to dismiss the Indictment under the "outrageous government conduct doctrine." *Id.* at 14. *Fourth*, they ask us to dismiss the Indictment because of what they believe were violations of their right to a speedy trial under the Sixth Amendment. *Id.* at 15–22. *Fifth*, they want us to dismiss the Indictment because (they insist) their prolonged detention violated the provisions of Rule 48(b). *Id.* at 22. We'll address—and reject—each argument in turn.

## I. Subject-Matter Jurisdiction

The Defendants claim that we lack subject-matter jurisdiction over their case because (they say) the statute under which they were charged—the Maritime Drug Law Enforcement Act ("MDLEA")—is unconstitutional. *See* Motion at 4. But we've already rejected this argument in identical circumstances several times before. *See United States v. Pierre et al.*, 2022 WL 3042244 (S.D. Fla. Aug. 1, 2022) (Altman, J.); *United States v. Rodriguez et al.*, 2022 WL 3356632 (S.D. Fla. Aug. 15, 2022) (Altman, J.). We therefore incorporate our holdings from these earlier opinions and, for the reasons we articulated in those cases, **DENY** this first part of the Motion.

## II. Delay Before Presentment

The Defendants' second argument fares no better. Here, they ask us to dismiss the Indictment "as a sanction for the Rule 5 violations, the unreasonable delay in presentment, or under the 'outrageous' government conduct doctrine," pointing to their detention "for more than two weeks[7] without judicial oversight." Motion at 12. But (again, as we've said before) dismissal isn't the proper remedy for a Rule 5 violation. Indeed, "[t]he only remedy we have recognized for a violation of Rule 5 is the suppression of evidence obtained as a result of the violation." *United States v. Carruthers*, 2012 WL 447412, at *6 (11th Cir. 2012); *see also United States v. Cabezas-Montano*, 949 F.3d 567, 594 n.25 (11th Cir. 2020) ("[T]he remedy for a . . . Rule 5(a) delay-in-presentment violation is suppression of the

---

[7] They calculate these two weeks from their July 8, 2022 interdiction to their July 26, 2022 initial appearances.

evidence obtained during the delay, not the vacatur of a conviction."); *United States v. Mendoza*, 473 F.2d 697, 702 (5th Cir. 1973) ("A violation of [Rule 5] renders the evidence obtained *per se* inadmissible.");[8] *United States v. Purvis*, 768 F.2d 1237, 1238 (11th Cir. 1985) (collecting cases for the proposition that suppression, not dismissal, is the appropriate remedy for a Rule 5 violation); *United States v. Chavez*, 705 F.3d 381, 385–86 (8th Cir. 2013) (noting, after finding a Rule 5 violation, that, "[e]ven if there were [a showing of prejudice from the delay], the appropriate remedy would be suppression of the statements made during that period, not dismissal of the indictment"); *Anderson v. Calderon*, 232 F.3d 1053, 1071 (9th Cir. 2000) ("[W]e conclude that the appropriate remedy for a *McLaughlin* [Rule 5(b)] violation is the exclusion of the evidence in question—if it was 'fruit of the poisonous tree.'").[9]

And this makes sense. After all, "[i]t is one thing to say that officers shall gain no advantage from violating the individual's rights; it is quite another to declare that such a violation shall put him beyond the law's reach even if his guilt can be proved by evidence that has been obtained lawfully." *Sutton v. United States*, 267 F.2d 271, 272 (4th Cir. 1959). And it's not as if a defendant whose rights the Government has violated—but against whom the Government has collected, through the violation, *no* inculpatory evidence—would have no remedy. Such a defendant could always seek redress for the violation by filing a civil lawsuit against the United States. Because dismissal of an indictment is not the right remedy for a Rule 5 violation, then, we **DENY** this part of the Motion as well.[10]

---

[8] Decisions of the former Fifth Circuit handed down before October 1, 1981 are binding precedent in the Eleventh Circuit. *See Bonner v. City of Prichard*, 661 F.2d 1206, 1209 (11th Cir. 1981) (en banc).

[9] This Ninth Circuit case was overruled on other grounds by *Bittaker v. Woodford*, 331 F.3d 715 (9th Cir. 2003).

[10] Two more things on this. *First*, in their Motion, the Defendants didn't point to any evidence the Government may have obtained as a result of this alleged Rule 5 violation. Nor did they move to suppress any such evidence. If there *is* any such evidence, of course, the Defendants are free to file a motion to suppress, reraising their Rule 5 arguments and asking for the proper remedy: suppression. But (and here's our *second* point) we caution the Defendants that "Rule 5(b)'s protections don't extend to non-citizens arrested in international waters." *United States v. Duran et al.*, No. 21-cr-20521-RKA (S.D. Fla. Nov. 16, 2022) (Altman, J.), ECF No. 80 at 43. That's because "[b]oth the standards and

### III.     Outrageous Government Conduct

In their third argument for dismissal, the Defendants rely on *dicta* from then-Justice Rehnquist, who (in 1973) mused about the possibility that the Supreme Court "may some day be presented with a situation in which the conduct of law enforcement agents is so outrageous that due process principles would absolutely bar the government from invoking judicial process to obtain a conviction." *United States v. Russell*, 411 U.S. 423, 431–32 (1973). Quoting only this one line (now fifty years old), the Defendants urge us to dismiss the Indictment because of what they characterize as the Government's "pattern of callous disregard for the rights of the accused." Motion at 15. But, so far as we can tell, neither the Supreme Court nor the Eleventh Circuit has *ever* dismissed an indictment under this doctrine. *See United States v. Castaneda*, 997 F.3d 1318, 1324 (11th Cir. 2021) ("Outrageous conduct is only a potential defense in this circuit because neither the Supreme Court nor this Court has ever found it to actually apply and barred the prosecution of any case based on it.").

Nor would the doctrine apply on our facts anyway. "Outrageous government conduct occurs when law enforcement obtains a conviction for conduct beyond the defendant's predisposition by employing methods that fail to comport with due process guarantees." *United States v. Cizkowski*, 492 F.3d 1264, 1270 (11th Cir. 2007); *see also United States v. Jayyousi*, 657 F.3d 1085, 1111–12 (11th Cir. 2011) ("Although we have never acknowledged the existence of the outrageous government conduct doctrine, we note that the actionable government misconduct must relate to the defendant's

---

procedures for arrest and detention have been derived from the Fourth Amendment and its common law antecedents," *Gerstein v. Pugh*, 420 U.S. 103, 111 (1975), and "the Fourth Amendment does not apply to searches and seizures (arrests) by the United States of a non-citizen/non-resident alien arrested in international waters or a foreign country," *Cabezas-Montano*, 949 F.3d at 593; *see also United States v. Verdugo-Urquidez*, 494 U.S. 259, 266 (1990) ("The available historical data show, therefore, that the purpose of the Fourth Amendment was to protect the people of the United States against arbitrary action by their own Government; it was never suggested that the provision was intended to restrain the actions of the Federal Government against aliens outside of the United States territory. There is likewise no indication that the Fourth Amendment was understood by contemporaries of the Framers to apply to activities of the United States directed against aliens in foreign territory or in international waters.").

underlying or charged criminal acts."). Our Defendants never even suggest that the Government's (alleged) misconduct—which *postdates* their criminal conduct—somehow caused them to participate in crimes they weren't otherwise predisposed to commit. We therefore **DENY** this third part of the Motion as well.

### IV. Sixth Amendment Speedy Trial

The Defendants next invoke the Sixth Amendment's guarantee that, "[i]n all criminal prosecutions, the accused shall enjoy the right to a speedy and public trial[.]" Motion at 15 (quoting U.S. CONST. amend. VI). "[T]he excessive post-indictment delay experienced by the defendants before being brought before this Court for trial," they insist, "requires dismissal as a violation of their Sixth Amendment guarantee to a speedy trial." *Id.* at 22. Unfortunately for the Defendants, their Sixth Amendment contentions are squarely foreclosed by the law of our Circuit.

"The Sixth Amendment right to a speedy trial attaches at the time of arrest or indictment, whichever comes first, and continues until the date of trial." *United States v. Gonzalez*, 671 F.2d 441, 444 (11th Cir. 1982) (quoting *United States v. Walters*, 591 F.2d 1195, 1200 (5th Cir.), *cert. denied*, 442 U.S. 945 (1979)). The Supreme Court has identified four (non-exhaustive) factors for us to consider in assessing "whether a particular defendant has been deprived of his [Sixth Amendment] right." *Barker v. Wingo*, 407 U.S. 514, 530 (1972). These four familiar factors are: the "[l]ength of delay, the reason for the delay, the defendant's assertion of his right, and prejudice to the defendant." *Ibid.* "No factor, standing alone, is sufficient to establish that the defendant's Sixth Amendment right has been violated." *United States v. Knowles*, 390 F. App'x 915, 929 (11th Cir. 2010). And, "unless the first three *Barker* factors all weigh heavily against the government, the defendants must demonstrate actual prejudice." *Ibid.* (quoting *United States v. Mitchell*, 769 F.2d 1544, 1547 (11th Cir. 1985)). "The first factor"—the length of the delay—"serves a triggering function; unless some 'presumptively prejudicial' period of delay occurred, we need not conduct the remainder of the analysis." *United States*

*v. Register*, 182 F.3d 820, 827 (11th Cir. 1999) (quoting *Barker*, 407 U.S. at 530); *see also Gonzalez*, 671 F.2d at 444 ("Our cases require us to examine this ninety day delay to determine if it was presumptively prejudicial; if we find that it was not, we need not inquire further." (cleaned up)).

Our analysis thus begins and ends with this all-important first factor because the delay in our case was *not* presumptively prejudicial. "Delays exceeding one year are generally found to be presumptively prejudicial." *United States v. Ingram*, 446 F.3d 1332, 1336 (11th Cir. 2006) (citing *Doggett v. United States*, 505 U.S. 647, 652 n.1 (1992)).[11] Our Defendants don't come close to this one-year threshold. There is (admittedly) some dispute about how long the delay was in our case. The Government says that it was "five months between the date of the indictment and the date the defendants appeared for their initial hearings in the Southern District of Florida[.]" Response at 18. Meanwhile, the Defendants aren't quite sure whether the delay was *six* months—"between the filing of the indictment and the defendants' initial trial date," Motion at 16—or *seven* (a period that would include "the one-month pre-indictment delay" between their interdiction at sea and their indictment), *see* Reply at 9 n.10. Fortunately, we don't really need to get into which of these three calculations is correct because they *all* fall well short of the one-year triggering point. But (for what it's worth) we think they're all wrong: The period of delay actually ran from July 26, 2022—when the Government filed its Complaint *and* the Defendants appeared before a magistrate judge in Puerto Rico—up until the original (February 13, 2023) trial date.

"[I]t is readily understandable that it is either a formal indictment *or* information *or* else the actual restraints imposed by arrest *and* holding to answer a criminal charge that engage the particular

---

[11] "[A]s the term is used in this threshold context, 'presumptive prejudice' does not necessarily indicate a statistical probability of prejudice; it simply marks the point at which courts deem the delay unreasonable enough to trigger the *Barker* enquiry." *Doggett*, 505 U.S. at 652 n.1. In *Ingram*, for instance, "the district court found, and the Government concede[d], . . . [and the Eleventh Circuit] agree[d] that the two-year delay between indictment and trial require[d] [the court] to proceed with the *Barker* test." *Ingram*, 446 F.3d at 1336–37; *see also Doggett*, 505 U.S. at 652 ("In this case, the extraordinary 8 ½ year lag between Doggett's indictment and arrest clearly suffices to trigger the speedy trial enquiry[.]").

9

protections of the speedy trial provision of the Sixth Amendment." *Dillingham v. United States*, 423 U.S. 64, 65 (1975) (emphases added). The date of interdiction thus didn't trigger the Sixth Amendment clock because, despite being physically restrained, the Defendants weren't yet "h[eld] to answer a criminal charge." As the Supreme Court has clarified, "[a]lthough delay prior to arrest or indictment may give rise to a due process claim under the Fifth Amendment . . . no Sixth Amendment right to a speedy trial arises until charges are pending." *United States v. MacDonald*, 456 U.S. 1, 7 (1982); *see also United States v. Witchard*, 646 F. App'x 793, 795 (11th Cir. 2016) ("[T]he Sixth Amendment right to a speedy trial is not triggered 'until charges are pending.'"); *United States v. Sayers*, 698 F.2d 1128, 1131 (11th Cir. 1983) ("In passing upon a sixth amendment right to speedy trial in *United States v. MacDonald* . . . the Supreme Court held that a charge was necessary to commence the running of the time."). And, as the Defendants concede, no charges were pending against them until "[t]he criminal complaint was filed . . . on July 26, 2022, the same day the defendants made their initial appearance in Puerto Rico." Motion at 2.

This approach is consistent with the Eleventh Circuit's decision in *United States v. Reme*, 738 F.2d 1156 (11th Cir. 1984). In that case, the appellants were Haitian nationals who had been seized (along with approximately 85 other foreign nationals) when their boat came ashore in Miami Beach on October 1, 1981. *Id.* at 1159. All of the passengers were immediately arrested and detained by the Immigration and Naturalization Service on suspicion of illegal entry. *Ibid.* Then, on July 9, 1982, some nine months later, a grand jury indicted ten of the boat's occupants—including one of the appellants, Pierrot—on fifteen counts of transporting aliens into the country. *Ibid.* One important detail: At some point *before* the indictment, though we don't know exactly when, "Pierrot and some of the other Haitians were transferred from the detention center to a federal correctional facility, but the record does not reveal the reason." *Id.* at 1163. When Pierrot challenged his indictment on Sixth Amendment grounds, the Eleventh Circuit held that, even "assuming [ ] Pierrot's transfer was related to the

discovery by immigration authorities of his involvement in the transporting conspiracy . . . the transfer would not constitute an 'accusation' that would trigger the Sixth Amendment," because "there has been no 'accusation' . . . until an indictment has been handed down or formal charges otherwise filed." *Ibid.* (citing *United States v. Manetta*, 551 F.2d 1352, 1354 (5th Cir. 1977)). *Reme* therefore lends further support to our view that the Defendants—who were taken into Coast Guard custody on July 8, 2022—weren't formally *accused* for purposes of the Sixth Amendment until the Complaint was filed on July 26, 2022.

As for the end date: The Government is wrong to suggest that the relevant period terminated on "the date the defendants appeared for their initial hearings in the Southern District of Florida[.]" Response at 18. *All* of the relevant cases set the end of the delay period at "the date of trial," *Gonzalez*, 671 F.2d at 444, and we've found *no* case—nor has the Government cited one—for the proposition that we should stop counting when the defendants enter their initial appearances, *see generally* Response (failing to cite *any* support for this proposition). The Defendants are thus right to say that the delay ended on "the defendants' initial trial date," which was February 13, 2023. *See* Motion at 16; *see also* Trial Order [ECF No. 14]. Nor could they have argued otherwise—since all subsequent delays came

*either* at their request[12] *or* because we needed time to adjudicate this Motion properly.[13] *See, e.g.*, *United States v. Schlei*, 122 F.3d 944, 987 (11th Cir. 1997) (analyzing a Sixth Amendment speedy-trial claim and holding that, "where the delay was caused by numerous pretrial motions; the illness of an essential government witness; defendant's substitution of counsel; and scheduling conflicts resulting in the unavailability of certain defense counsel, there was no violation of the Sixth Amendment" (cleaned up)).

All of which is to say that the pretrial delay in our case lasted six months and eighteen days—from July 26, 2022, when the Government filed its Complaint, until the original trial date (February 13, 2023). But, even if the delay *were* seven months (as the Defendants now claim in Reply), our Circuit's precedents are clear that anything less than a year is just not long enough to trigger a full *Barker* analysis. *See, e.g.*, *United States v. Dowdell*, 2023 WL 3773715, at *6 (11th Cir. 2023) ("This nine-month delay was not presumptively prejudicial. We therefore conclude that Dowdell's right to a speedy trial was not violated without reaching the other *Barker* factors." (cleaned up)); *United States v. Derose*,

---

[12] *See* First Unopposed Joint Motion to Continue [ECF No. 15] at 2 ("To permit time to meet with the clients, to review discovery, discuss possible legal defenses and pretrial motions, counsel respectfully requests the Court continue the trial and pretrial deadlines for 60 days. The Defendants agree to exclusion from the speedy trial period of the time from the filing of this motion to the new trial date."); Amended Trial Order [ECF No. 16] (granting the First Unopposed Joint Motion to Continue and finding that "[t]he period of delay resulting from this continuance—from the day the Motion was filed, January 30, 2023, through the new trial date, April 10, 2023—shall be considered excludable time under the Speedy Trial Act"); Second Unopposed Joint Motion to Continue Trial [ECF No. 18] at 2 ("The defendants respectfully request a 90-day continuance of the current trial setting to allow the parties sufficient time to efficiently and effectively litigate the defendants' pending motion to dismiss . . . . the defendants, having been fully advised of their rights under the Speedy Trial Act, 18 U.S.C. § 3161, hereby agree that the time from the filing of this motion to continue . . . through the next trial date, is excludable time[.]"); Second Amended Trial Order [ECF No. 19] (granting the Second Unopposed Joint Motion to Continue and finding that "[t]he period of delay resulting from this continuance—from the day the Motion was filed, March 27, 2023, through the new trial date, June 20, 2023—shall be considered excludable time under the Speedy Trial Act").

[13] *See* Third Amended Trial Order [ECF No. 25] at 1 ("The Defendants—Osvaldo Gonzalez, Humberto Vasquez Diaz, and Angel Gabriel Palanco—have filed a Motion to Dismiss [ECF No. 17] ("Motion"), which the Court has yet to adjudicate. To give us time to fully consider that Motion, the Court hereby CONTINUES this Criminal Jury Trial to the two-week period beginning August 14, 2023.").

74 F.3d 1177, 1185 (11th Cir. 1996) ("The record also shows that the delay between the time of Derose and Ould's accusation and arrest and their trial for the possession charge was approximately eight months. This eight-month delay is insufficient to merit a Sixth Amendment speedy trial violation inquiry."); *United States v. Rankin*, 572 F.2d 503, 505 (5th Cir. 1978) ("A seven-month delay is not presumptively prejudicial [for purposes of the Sixth Amendment], and there is a satisfactory explanation for most of the 220-day period between arraignment and trial. In light of these facts, dismissal was not required.").

Still resisting, the Defendants insist that "there are exceptional reasons why this period of delay remains presumptively prejudicial and why the defendant should be considered to have passed the threshold inquiry here." Motion at 16–17. But they cite no case for their view that a six- or seven-month delay *might* qualify as presumptively prejudicial, *see generally* Motion; Reply—which is reason enough to disregard their claim, *see Sappupo v. Allstate Floridian Ins. Co.*, 739 F.3d 678, 681 (11th Cir. 2014) ("We have long held that an appellant abandons a claim when he either makes only passing references to it or raises it in a perfunctory manner without supporting arguments and authority."); *Hamilton v. Southland Christian Sch., Inc.*, 680 F.3d 1316, 1319 (11th Cir. 2012) ("[T]he failure to make arguments and cite authorities in support of an issue waives it."); *In re Egidi*, 571 F.3d 1156, 1163 (11th Cir. 2009) ("Arguments not properly presented . . . are deemed waived."). Nor have we, after reading *every* Eleventh Circuit decision that has ever cited *Barker v. Wingo*, identified any such case.

Because the delay in our case was *not* presumptively prejudicial, we don't reach the other three *Barker* factors and **DENY** this fourth part of the Motion.

V. **Rule 48(b)**

Finally, the Defendants lodge a cursory argument for dismissal under Rule 48(b), which provides that the "Court may dismiss an indictment, information, or complaint if unnecessary delay occurs in: . . . bringing a defendant to trial." FED. R. CRIM. P. 48(b). The Defendants ask us to dismiss

13

under Rule 48 "because [they] were denied both their constitutional and procedural rights to a speedy trial and [were] prejudiced by the delay here[.]" Motion at 23. But, as the Defendants concede (*see ibid.*), dismissal under Rule 48(b) "is governed by the same general considerations as the Sixth Amendment," *United States v. DeLuna*, 763 F.2d 897, 923 (8th Cir. 1985); *see also United States v. Knight*, 562 F.3d 1314, 1324 (11th Cir. 2009) ("Because Knight did not establish a violation of the Sixth Amendment, it also was not an abuse of discretion for the district court to deny his motion to dismiss his indictment under Federal Rule of Criminal Procedure 48(b)."); *United States v. Butler*, 792 F.2d 1528, 1533 (11th Cir. 1986) ("[Rule 48] thus vests much discretion in the trial court, and dismissal is mandatory only if the defendant's constitutional rights have been violated."). Having found the Defendants' Sixth Amendment claims unavailaing, we now likewise reject their Rule 48 contention.

***

After careful review, therefore, we hereby **ORDER and ADJUDGE** that the Defendants' Motion to Dismiss [ECF No. 17] is **DENIED**.

**DONE AND ORDERED** in the Southern District of Florida on July 18, 2023.

_____
**ROY K. ALTMAN**
**UNITED STATES DISTRICT JUDGE**

cc: counsel of record